**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2011

No. 10-60594

Lyle W. Cayce
Clerk

MISSISSIPPI CARE CENTER OF MORTON, L.L.C.

Plaintiff-Appellant

v.

KATHLEEN SEBELIUS in her official capacity as Secretary of United States
Department of Health and Human Services

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:07-CV-498

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

WIENER, Circuit Judge:[*]

Plaintiff-Appellant Mississippi Care Center of Morton ("Morton") owns and operates a facility that provides nursing home and custodial care services. From August through October 2002, Morton provided such services to Medicare beneficiary Mary Nichols ("the Beneficiary"). As these services were custodial, Medicare did not cover them. The Medicare contractor that processed the Beneficiary's claims determined that, because neither she nor her representative

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60594

were given proper written notice of noncoverage by Morton at the time of admission, she was not liable for payment to Morton for the services in question. Eventually, after two redeterminations, an administrative law judge ("ALJ") concluded that Morton had failed to establish that the Beneficiary received proper notice. The district court upheld the ALJ's determination that the Beneficiary was not liable for the services. We affirm.

## I. FACTS & PROCEEDINGS

In early August 2002, the Beneficiary was admitted to Morton's facility as a custodial care/private pay resident. According to Morton, a "Consent to Placement in Facility Medicare Certified Bed" form (the "Notice Form") was given to the Beneficiary's representative (the "Representative") when the Beneficiary was admitted. The Representative, however, did not sign that form. Five months later, in January 2003, Morton sent the Representative a notice of proposed discharge of the Beneficiary for failure to pay. In response, the Representative requested that Morton submit its claim for the services provided between August and October 2002 to Medicare.

TriSpan Health Services ("TriSpan"), Medicare's fiscal intermediary, denied payment for these services because the information it requested, a written notice that the services were not covered by Medicare, had not been provided to the Beneficiary on admission. Morton requested and received a reconsideration of the initial TriSpan determination. On reconsideration, however, TriSpan upheld its initial determination based on its assertion that, on admission, a beneficiary must be informed in writing that the services are not covered by Medicare, and that such writing must be signed and dated by either the beneficiary or his representative, which had not been done.

2

No. 10-60594

Morton next sought clarification from the Centers for Medicare & Medicaid Services ("CMS"). The CMS responded by mail, citing CMS Ruling 95-1, Section IV.A, which specifies the criteria for determining beneficiary knowledge under the limitation of liability. Morton then requested that TriSpan's reconsideration be reopened in light of the CMS letter. TriSpan reopened the determination and concluded that, indeed, the Beneficiary was liable for the noncovered charges.

In response to that determination on reopening, the Beneficiary filed an appeal with the ALJ. On appeal, the ALJ determined that (1) the services were custodial in nature and, therefore, not covered by Medicare, but (2) the Beneficiary was not liable for the services because she had not been given a proper notice that Medicare did not cover the services. Morton then requested that the Medicare Appeals Council review the ALJ's decision, but that request was denied. Consequently, the ALJ's decision is considered the final decision of Defendant-Appellee the Secretary of the United States Department of Health and Human Services (the "Secretary").

Morton filed the instant action against the Secretary in district court, pursuant to 42 U.S.C. § 1395ff(b). After the parties filed cross-motions for summary judgment, the district court granted the Secretary's motion and entered a final judgment in favor of the Secretary, the effect of which was to relieve the Beneficiary of any responsibility for the payments sought by Morton. Morton timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo.[1] When we review a final agency decision, however, our standard is highly deferential:

---

[1] *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 774 (5th Cir. 2010) (citation omitted).

3

No. 10-60594

We only look to see if the final agency decision (1) comports with the applicable legal standards and (2) is supported by substantial evidence.[2] We "may not overturn the Secretary's decision if it is supported by substantial evidence — 'more than a mere scintilla' . . . ."[3]

## III. ANALYSIS

Medicare is a federally funded health insurance program for the eligible elderly and disabled. It is codified in Title XVIII of the Social Security Act.[4] The program comprises four parts. "Part A" of Medicare[5] provides coverage for hospital services and post-hospital extended care services, including care at skilled nursing facilities.[6] Part A, however, generally excludes coverage for "custodial care."[7] Part A limits the liability of a beneficiary when the beneficiary does not know, and could not have reasonably known, that the provider's service was not covered.[8] Part A does not provide for reimbursement when "both the individual to whom the items or services were furnished and the provider of service or other person, as the case may be, who furnished the items or services

---

[2] *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992) (citing *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988)).

[3] *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (defining the standard as requiring such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.)).

[4] 42 U.S.C. § 1395 *et seq.*

[5] *Id.* §§ 1395c–1395i-5.

[6] *Id.* § 1395a(2)(A).

[7] *Id.* § 1395y(a)(9).

[8] *Id.* § 1395pp(b).

4

knew, or could reasonably have been expected to know, that payment could not be made for items or services . . . by reason of a coverage denial . . . ."[9]

42 C.F.R. § 411.404 further describes the criteria for determining whether a beneficiary knew that services such as custodial care were excluded from coverage. It defines the basic rule as requiring that (1) "[w]ritten notice is given to the beneficiary, or to someone acting on his or her behalf, that the services were not covered because they did not meet Medicare coverage guidelines"[10] and (2) the notice is given by "[t]he QIO, intermediary, [] carrier . . . [t]he group [] committee responsible for utilization review for the provider that furnished the services . . . [t]he provider, practitioner, or supplier that furnished the service."[11]

Section 411.404 does not, however, establish the exclusive method for determining whether the beneficiary had knowledge that the services were not covered. CMS has clarified its policy regarding this regulation in one of its rulings, noting that, "[w]hile § 411.404 provides criteria for beneficiary knowledge based on written notice, section 1879(a)(2) of the Act[12] specifies only that knowledge must not exist in order to apply the limitation on liability protection."[13] In the Skilled Nursing Facility Manual (the "Manual"),[14] CMS

---

[9] *Id.* § 1395pp(c).

[10] Public Health, 42 C.F.R. § 411.404(b)(1).

[11] *Id.* § 411.404(c).

[12] 42 U.S.C. § 1395pp(a)(2).

[13] HEALTH CARE FINANCING ADMINISTRATION RULING 95-1 at 17 (Dec. 31, 1995) ("HCFAR 95-1").

[14] Many courts, including this one, have recognized the importance of Medicare manuals in the administration of the Medicare program, as well as how the Secretary will apply and interpret Medicare statues and regulations. *See Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995) ("The Secretary has promulgated regulations setting forth the basic principles and methods of reimbursement, and has issued interpretive rules such as [Medicare Provider Reimbursement Manual] § 233 that advise providers how she will apply the Medicare statute and regulations in adjudicating particular reimbursement claims."); *Cmty. Care, LLC*

further instructs providers that "[i]f you are aware that the services to be furnished to a patient are not covered, advise the patient (or representative) in writing prior to, or at, admission (or when the type of care changes during a stay) that the care is noncovered and why . . ." and urges providers to "[e]stablish a procedure for notifying beneficiaries and physicians promptly when a decision of noncoverage is made . . . [i]t must provide for the written notice of noncoverage to the beneficiary . . . ."[15]  Thus, a deviation from the procedure outlined in § 404.411 does not automatically exonerate the beneficiary from responsibility for the noncovered services.

In the instant case, the ALJ misapplied the relevant law when he concluded that "[a]n individual is found to have known that items or services were excluded from coverage *only if* the individual or someone acting on behalf of the individual has been given written notice from an appropriate source stating that the items or services were excluded from coverage."  Although written notice is sufficient to rebut the presumption that the beneficiary did not receive proper advance notice of noncoverage, all the provider must do to rebut that presumption is establish a "clear and obvious" record that the beneficiary had the requisite knowledge that coverage would be denied.[16]

Nevertheless, the ALJ's subsequent determination that Morton did not carry its burden of persuasion and production is correct.  Morton contends that

---

*v. Leavitt*, 537 F.3d 546, 547 n.2 (5th Cir. 2008) ("The [Medicare Provider Reimbursement Manual] contains non-binding guidelines and interpretative rules to assist providers and intermediaries in the implementation of the Medicare regulations." (internal quotation marks and citation omitted)); *Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 404 (6th Cir. 2007); *Shalala v. St. Paul-Ramsey Med. Ctr.*, 50 F.3d 522, 527-28 (8th Cir. 1995).  *See also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations." (citations omitted)).

[15] U.S. DEP'T OF HEALTH & HUMAN SERVS., SKILLED NURSING FACILITY MANUAL § 356.1 (2005).

[16] *See* HCFAR 95-1 at 17-18.

No. 10-60594

multiple staff members orally informed the Representative at the time that the services would not be covered and that it provided the Notice Form to the Representative when the Beneficiary was admitted. The task of assessing credibility and resolving conflicts of evidence lies firmly with the ALJ.[17] Here, the ALJ discounted the value of the Notice Form, which neither the Representative nor the Beneficiary signed, because of its late appearance in the record. As the ALJ noted, Morton did not produce that form, purportedly dated August 8, 2002, until June 2004, more than a year after Morton initially requested Medicare payment and after several determinations by TriSpan. The ALJ also discounted Morton's evidence of oral notice. Based on this record, the ALJ could easily reach those conclusions. We therefore defer to the ALJ's findings that notice was not sufficient under these facts.

## IV.  CONCLUSION

Despite the ALJ's identification and application of an inapplicable legal standard, substantial evidence supports his ultimate conclusion. We therefore affirm the district court's summary judgment that affirms the ALJ's holding, albeit on somewhat different grounds.

AFFIRMED.

---

[17] *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

No. 10-60594

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

I would remand this case. Two things are clear: (1) the ALJ applied an incorrect legal standard requiring advance *written* notice of non-coverage and (2) the ALJ's decision makes no explicit factual findings regarding whether advance *oral* notices were given. In light of these two points, by affirming the ALJ's decision the majority necessarily relies on its own factual determination that no sufficient oral notice was given to the beneficiary.

By treating written notice as necessary, the ALJ improperly foreclosed Morton's argument that it was "clear and obvious" the beneficiary had knowledge of non-coverage based on repeated *oral* notice. I therefore do not agree with the majority's conclusion that "[t]he ALJ . . . discounted Morton's evidence of oral notice." The ALJ's decision *dismissed* the evidence of oral notice as legally irrelevant rather than considering it and "discounting" it as incredible. Notably, the ALJ did not even mention the alleged oral notices in the section of his decision entitled "Evaluation of the Evidence." Indeed, because he had expressly stated his erroneous view that oral notice was legally insufficient, the ALJ had no reason to make findings regarding whether advance oral notices were given. Though it couches its decision in the language of deference, the majority strains to uphold a result that it concludes, on its own implicit factual determination, is correct. Deference to the ALJ means upholding a finding of fact where it is reasonable, not supplying a finding of fact where doing so enables an affirmance.

I respectfully dissent.