# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10219
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2019

Lyle W. Cayce
Clerk

MAMADOU NDOM,

Plaintiff - Appellant,

v.

KEVIN K. MCALEENAN, Acting Secretary, U.S. Department of Homeland
Security; DONALD NEUFELD, Associate Director, Service Centers
Operations; DAVID ROARK, Director, Texas Service Center; L. FRANCIS
CISSNA,

Defendants - Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-3432

Before CLEMENT, ELROD, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

The Government denied Mamadou Ndom's application to adjust his
status to permanent resident. Believing the denial to be arbitrary and
capricious, Ndom filed suit in district court. The court granted summary
judgment in favor of the Government. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 19-10219

In 1990, *Mouvement des forces democratiques de Casamance* ("MFDC") declared an armed struggle against the central government of Senegal. That same year, Ndom joined MFDC and remained with the organization until 1993. He regularly attended MFDC meetings. And in 1992, in compliance with MFDC orders, Ndom used dynamite to blow up a bridge.

In 1997, Ndom entered the United States with a fraudulent passport. He applied for asylum shortly thereafter. In 2001, the Immigration Judge ("IJ") denied him asylum because Ndom failed to show he was persecuted in Senegal. The Board of Immigration Appeals ("BIA") affirmed. But the Ninth Circuit reversed. *Ndom v. Ashcroft*, 384 F.3d 743, 756 (9th Cir. 2004). So the BIA granted him asylum in 2005.

In 2006, Ndom applied for an adjustment in status to permanent resident. On September 26, 2017, USCIS denied Ndom's application because he provided material support to MFDC, an undesignated terrorist group. Ndom challenged the decision in the district court, and the court granted summary judgment for USCIS. Our review is de novo. *See Amrollah v. Napolitano*, 710 F.3d 568, 570 (5th Cir. 2013).

Ndom first argues that the 2001 IJ decision has issue-preclusive effect on whether he provided material support to a terrorist group. But that IJ decision found Ndom *was* called upon to perform terrorist activity. And in all events, preclusion attaches only to an issue that "was necessary to the decision." *Id.* at 571; *see also id.* at 572 (finding a determination about terrorist activity was necessary when asylum was granted, not denied on other grounds). And Ndom cannot show the 2001 IJ's necessarily decided any issue in his *favor* while *denying* his asylum application.

Ndom next argues the Ninth Circuit's decision precludes the material-support issue in his favor. But issue preclusion attaches only to an issue that was "actually litigated." *Id.* at 571. And the Ninth Circuit's opinion says

2

nothing about the material-support issue. Therefore, this decision too does not meet the requirements of issue preclusion.

Even without issue preclusion, Ndom argues that the USCIS's decision was arbitrary and capricious. 5 U.S.C. § 706(2)(A). He offers five arguments in that regard. All fail.

First, Ndom suggests that carrying the bags of dynamite to the bridge does not constitute "material support" of MFDC. That is plainly wrong. *See Sesay v. Attorney Gen. of U.S.*, 787 F.3d 215, 222 (3d Cir. 2015) (holding that "carrying weapons and ammunition" is material support); *Hosseini v. Nielsen*, 911 F.3d 366, 377 (6th Cir. 2018) (finding that copying and distributing flyers is material support).

Second, Ndom argues that the MFDC was not engaged in "terrorist activity." But the statute defines "terrorist activity" to include "the use of any . . . explosive . . . to cause substantial damage to property." 8 U.S.C. § 1182(a)(3)(B)(iii)(V)(b). It was not arbitrary and capricious for USCIS to find that dynamiting a bridge falls within the plain definition of terrorist activity.

Third, Ndom points to cases suggesting that there are two additional requirements for a group like MFDC to be engaged in "terrorist activity." Assuming without deciding that these requirements apply, neither helps Ndom. He contends that there must be evidence that the terrorist activity was authorized by the organization's leaders. *See, e.g., Hussain v. Mukasey*, 518 F.3d 534, 538 (7th Cir. 2008). But Ndom admitted that he and "everybody at [an MFDC] meeting" received "orders" to drop off dynamite at a bridge. It was not arbitrary and capricious for USCIS to find such orders constituted authorization. Ndom also argues that these terrorist activities must happen while Ndom was a member of MFDC. *See, e.g., Daneshvar v. Ashcroft*, 355 F.3d 615, 628 (6th Cir. 2004). But it is undisputed Ndom was an MFDC member during the 1992 bridge bombing.

No. 19-10219

Fourth, Ndom asserts that USCIS acted arbitrarily and capriciously by relying, in part, on a report from an asylum officer. He argues the asylum officer described Ndom as "willfully" bringing the bags of dynamite to the bridge, which Ndom contests. But as the district court noted, Ndom has made no showing whatsoever to argue that his actions were not willful. More than merely saying a matter is not true is needed to survive summary judgment or to show USCIS erred by relying on evidence in the record. *See Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that an opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."); *see also Alaswad v. Johnson*, 574 F. App'x 483, 486 (5th Cir. 2014) (holding BIA did not err by relying on appellants "previous representations" despite arguably contradictory record evidence).

Finally, Ndom contends that USCIS erred by failing to apply a "lack of knowledge" exception. Even if a person provides material support, their actions may be excused if they show by "clear and convincing evidence" that they did not know or "should not reasonably have known" that the organization was a terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). Even if Ndom knew nothing else about MFDC—not the widespread campaign of violence, torture, and killings indicated in the record—he knew about the bridge explosion and remained a member of MFDC for the following year. It was not arbitrary and capricious for USCIS to find he failed to meet his burden.

AFFIRMED.