*Azatullah v. Noem*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of August, two thousand twenty-five.

PRESENT:
>ROBERT D. SACK,
>RAYMOND J. LOHIER, JR.,
>MARIA ARAÚJO KAHN,
>>*Circuit Judges.*

_____

AHMAD SEIR AZATULLAH,

>*Plaintiff-Appellant,*

>v.                                                                        23-7722

KRISTI NOEM, SECRETARY OF THE
DEPARTMENT OF HOMELAND SECURITY,
JOSEPH B. EDLOW, DIRECTOR OF THE
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, TAMIKA GRAY,
DIRECTOR OF THE NEW YORK DISTRICT OF
THE UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

>*Defendants-Appellees.**

_____

FOR PLAINTIFF-APPELLANT:          ELISE A. YABLONSKI, Stone Law Group PLLC,
                                  New York, NY (Valerie H. McPherson,

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the Clerk of Court is respectfully directed to amend the official caption as set forth above.

Fragomen, Del Rey, Bernsen & Loewy, LLP, New York, NY; Massimo Capizzi, Proskauer Rose LLP, New York, NY, *on the brief*).

FOR DEFENDANTS-APPELLEES:

JOSHUA S. PRESS (Benjamin H. Torrance, *on the brief*), Special Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

FOR AMICI CURIAE:

Matt Adams, Northwest Immigrant Rights Project, Seattle, WA; Mary Kenney, Kristin Macleod-Ball, National Immigration Litigation Alliance, Brookline, MA, *for Amici Curiae Northwest Immigrant Rights Project and National Immigration Litigation Alliance in support of Plaintiff-Appellant*;

Hannah Schoen, Cody Wofsy, Lee Gelernt, American Civil Liberties Union Foundation, Immigrants' Rights Project, San Francisco, CA, and New York, NY; Amy Belsher, New York Civil Liberties Union Foundation, New York, NY, *for Amici Curiae American Civil Liberties Union and New York Civil Liberties Union in support of Plaintiff-Appellant*;

David A. Isaacson, Cyrus D. Mehta & Partners PLLC, New York, NY; Michael E. Piston, Flushing, NY, *for Amicus Curiae American Immigration Lawyers Association in support of Plaintiff-Appellant*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Mary Kay Vyskocil, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court, entered on September 12, 2023, is **AFFIRMED**.

Plaintiff Ahmad Seir Azatullah sued Defendants alleging that U.S. Citizenship and Immigration Services ("USCIS") unlawfully denied his application for adjustment of status from

asylee to lawful permanent resident.[1]  According to Azatullah, the doctrine of collateral estoppel barred USCIS from concluding that Azatullah is inadmissible, and the denial of his application also violated statutory constraints on agency power set forth in the Administrative Procedure Act ("APA").

In 2001, an Immigration Judge ("IJ") granted Azatullah asylum based on his well-founded fears of persecution at the hands of the ascendant Taliban in his native Afghanistan.  This was Azatullah's second bid for asylum after his first—based on fears of persecution by Afghanistan's Soviet-backed government—was denied in 1992.  After he was granted asylum in 2001, Azatullah applied for a status adjustment under 8 U.S.C. § 1159.  Following a years-long delay, USCIS denied his application in 2019, concluding that Azatullah is inadmissible based on his past support of the Afghan mujahidin, which USCIS determined was a Tier III Terrorist Organization.

The District Court granted Defendants' motion to dismiss for lack of subject-matter jurisdiction after concluding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of USCIS's admissibility determination.  *Azatullah v. Mayorkas*, No. 20-CV-1069, 2023 WL 5935028, at *3–6 (S.D.N.Y. Sept. 12, 2023).  It nevertheless explained in a footnote that, if it had jurisdiction, it would conclude that "[c]ollateral estoppel did not preclude USCIS from finding Azatullah inadmissible based on his past support of the mujahidin because the issue was not 'actually litigated' at the [2001] asylum proceeding." *Id.* at *8 n.10.  The District Court also stated that "the Denial [of Azatullah's adjustment-of-status application] was not arbitrary and capricious because USCIS articulated a satisfactory explanation for its decision." *Id.* (internal quotation

---

[1] USCIS noted that its denial of Azatullah's application would not result in his losing his asylum status and that he remained authorized to work in the United States.

marks omitted).  Azatullah appeals.  We assume the parties' familiarity with the further underlying facts, procedural history of the case, and issues on appeal.

As a threshold matter, there is an open question in this Circuit as to whether we have jurisdiction to review any aspect of a USCIS decision denying discretionary relief, such as a status adjustment, outside of a removal proceeding.  *See Patel v. Garland*, 596 U.S. 328, 345–46 (2022). *But see Xia v. Bondi*, 137 F.4th 85, 89–91 (2d Cir. 2025) (holding that 8 U.S.C. § 1252(a)(2)(B)(i) precludes review of a USCIS determination under § 1255 made "outside the context of removal proceedings").  There is also an open question whether we have jurisdiction to review nondiscretionary eligibility determinations made by USCIS as a prerequisite to an exercise of discretion.  *See, e.g.*, *Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024) (declining to "resolve whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to review threshold determinations that the agency must make before exercising discretion").  We do not address these open questions today, for we may assume hypothetical jurisdiction where it stems from a federal statute.  *See Butcher v. Wendt*, 975 F.3d 236, 242–44 (2d Cir. 2020); 28 U.S.C. § 1291.  We have found this practice "particularly prudent" where, as here, "the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit."  *Butcher*, 975 F.3d at 242–43 (internal quotation marks omitted).

Because the District Court—which functioned here as an appellate tribunal—is in no better a position to pass on the merits of Azatullah's claims than we are, we think our addressing the merits here is appropriate.[2]  *See United States v. Patterson*, 25 F.4th 123, 149 (2d Cir. 2022) ("Although we generally refrain from addressing issues not decided in the first instance by the district court, this rule is prudential, and we have broad discretion to consider issues that were

---

[2] Because of the District Court's footnote, we are also without any doubt as to how it would have addressed the merits if it determined it had subject-matter jurisdiction to do so.  *See Azatullah*, 2023 WL 5935028, at *8 n.10.

4

briefed and argued in the district court, even if not decided there."). Azatullah's claim that the denial of his status-adjustment application was unlawful rests on three arguments pressed on appeal.[3] We address each in turn.

First, Azatullah alleges that USCIS's determination under 8 U.S.C. § 1182 that he is inadmissible as an alien under the statutory terrorism bar is foreclosed by collateral estoppel principles. In Azatullah's view, because he was granted asylum in 2001—a status for which, like permanent residence, an applicant must be admissible as an immigrant—the question of his admissibility was already necessarily decided at his 2001 asylum hearing. Azatullah's support of the mujahidin was known to the government at the time of his asylum hearing, and no objection to his designation as an asylee was made on that ground. Accordingly, the argument continues, USCIS "was legally barred from [subsequently] finding Azatullah inadmissible based on his past support of the mujahidin." Appellant's Br. at 51.

Collateral estoppel, also referred to as issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a prior judgment." *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021) (alteration adopted). To invoke collateral estoppel, a party must show that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the

---

[3] In his reply brief, Azatullah urges that we deem Defendants-Appellees to have waived any opposition on the merits by failing to address them in their appellate briefing and hold in Azatullah's favor. He argues that Defendants-Appellees "undoubtedly foresaw the possibility that this Court could reverse on subject matter jurisdiction," that they "ignored the merits at [their] peril," and that "[t]his Court should deem [their] opposition waived." Appellant's Reply Br. at 20. This mischaracterizes Defendants-Appellees' brief. They did not "ignore" the merits. They declined to brief them in full because the District Court only cursorily addressed them in its decision. Defendants-Appellees requested that, if we were to reverse the District Court's jurisdictional ruling, we remand for a more comprehensive treatment of the merits by the District Court. Appellees' Br. at 39 n.11. We assume hypothetical jurisdiction here and decline Defendants-Appellees' request for remand, but we do not think that their sparse briefing on the merits yields an automatic win for Azatullah.

party raising the issue had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (alterations adopted) (internal quotation marks omitted). The Supreme Court has "long favored application of the common-law doctrine[] of collateral estoppel . . . to those determinations of administrative bodies that have attained finality" and has said that collateral estoppel should apply "when the issue has been decided by an administrative agency . . . which acts in a judicial capacity." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107–08 (1991). However, the idea that preclusion doctrines apply with equal force to federal agency adjudications remains unsettled, and we have never adopted it wholesale. *See, e.g.*, *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008) ("Whether it would be consistent with Congress's statutory scheme to apply res judicata and bar the [Department of Homeland Security] from lodging additional grounds of removal in successive immigration proceedings indeed may be a difficult question."). But we may assume without deciding here that collateral estoppel does apply to USCIS's admissibility determination, because Azatullah nonetheless fails to satisfy the "actually litigated" prong of the collateral-estoppel test.

We have said that "[a] grant of asylum alone is insufficient to show that a terrorism bar was actually litigated." *Rahman v. Mayorkas*, No. 22-904-CV, 2023 WL 2397027, at *2 (2d Cir. Mar. 8, 2023) (summary order). Other Circuits have held the same. *See Islam v. Dep't of Homeland Sec.*, 997 F.3d 1333, 1342 (11th Cir. 2021); *Fofana v. Mayorkas*, 4 F.4th 668, 671–72 (8th Cir. 2021); *Janjua v. Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019). Though some courts have held that collateral estoppel precludes relitigation of a terrorism-bar determination, those cases involve circumstances markedly different from those at play here. In *Amrollah v. Napolitano*, 710 F.3d 568, 570–71 (5th Cir. 2013), for example, "[t]he government cross-examined Amrollah

extensively about his support of the mujah[idin] movement . . . during the asylum proceeding," and the IJ concluded that his "testimony showed he did not commit any violent act." The Fifth Circuit deemed the extensive cross-examination of Amrollah to be sufficient evidence that the terrorism-bar issue was "actually litigated," sufficient to invoke collateral estoppel. *Id.* at 571.

The record here does not establish that the issues of Azatullah's material support of a terrorist organization, or the mujahidin's designation as a terrorist organization, were actually litigated at his 2001 asylum hearing. The transcript of that hearing shows that Azatullah was asked by the Government only whether he had ever been arrested, had ever committed a crime for which he was not arrested, or had ever harmed someone on account of their race, religion, nationality, social group, or political opinion. Joint App'x at 419. He answered "no" to all of these questions. *Id.* Azatullah's attorney questioned him about his fear of returning to Afghanistan. *Id.* at 420–21. At no point was Azatullah's material support of the mujahidin or the potential effect of the statutory terrorism bar discussed at the hearing. The IJ did not mention the statutory terrorism bar or Azatullah's support of the mujahidin when she granted his asylum application. On this record, we cannot conclude that the question of Azatullah's inadmissibility on account of his support of a terrorist organization was actually litigated in 2001.

Azatullah's next argument—that USCIS terrorism-bar determination is arbitrary and capricious under the APA—fails for largely the same reason. The "complete reversal of position concerning Azatullah's admissibility" that Azatullah alleges assumes that USCIS necessarily took a position on the terrorism bar in the earlier asylum proceeding. Appellant's Br. at 53. But there is no evidence in the record that the agency made a prior determination on that issue other than, as Azatullah argues, the implied determination that was made when his asylum was granted. Because the terrorism bar was not litigated, there is no basis to support the notion that USCIS ever staked

out a definitive position in the first place or that its decision in 2019 that Azatullah is inadmissible effected a change in that position. The USCIS determination was not arbitrary and capricious.

Nor are we persuaded by Azatullah's final argument that USCIS has exceeded its statutory authority under 8 U.S.C. § 1182(a)(3)(B) by allowing Azatullah to remain an asylee despite having deemed him inadmissible under § 1182. This maneuver, Azatullah argues, creates a novel category of "inadmissible asylee." Appellant's Br. at 57. But while USCIS's determination that the terrorism bar makes Azatullah inadmissible seems inconsistent with a decision allowing him to maintain his asylum status, the locus of our inquiry here is 8 U.S.C. § 1182(a)(3)(B). That provision says nothing about whether a determination of inadmissibility retroactively functions to negate a non-citizen's asylum status. And the question of whether USCIS is empowered under other provisions of the immigration code to designate individuals as "inadmissible asylees" is not before us. We do not think USCIS exceeded its authority under § 1182 by deeming Azatullah inadmissible for his past material support of the mujahidin.

\*       \*       \*

We have considered Azatullah's remaining arguments on appeal and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8