## *PRELIMINARY PRINT*

## VOLUME 604 U. S. PART 1
### PAGES 6–19

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

DECEMBER 10, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# BOUARFA *v.* MAYORKAS, SECRETARY OF HOMELAND SECURITY, ET AL.

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 23–583.   Argued October 15, 2024—Decided December 10, 2024

Amina Bouarfa, a U. S. citizen, began the process of obtaining permanent legal residence for Ala'a Hamayel, her noncitizen spouse, by filing a visa petition with the U. S. Citizenship and Immigration Services (USCIS). Relevant here, USCIS "*shall* . . . approve" a visa petition if it "determines that the facts stated in the petition are true" and that the noncitizen is the petitioner's spouse.   8 U. S. C. § 1154(b) (emphasis added). But if the noncitizen has previously sought or received an immigration benefit "by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws"—known as the sham-marriage bar—the agency *must* deny the petition.   § 1154(c).   USCIS initially approved Bouarfa's visa petition. Two years later, the agency sent Bouarfa a Notice of Intent to Revoke its approval based on evidence suggesting that her husband had previously entered into a marriage for the purpose of evading immigration laws.    Although Bouarfa vigorously denied the evidence, the agency revoked its prior approval based on the Secretary of Homeland Security's statutory authority under § 1155 to "revoke the approval of any petition" "for good and sufficient cause."   The Board of Immigration Appeals affirmed the revocation, finding that USCIS's determination that Hamayel had entered into a prior sham marriage that would have prevented initial approval of the petition under § 1154(c) constituted "good and sufficient cause" for revocation under § 1155.

  Bouarfa challenged the agency's revocation in federal court.   The District Court dismissed the suit, holding that § 1252(a)(2)(B)(ii)—a provision that strips federal courts of jurisdiction to review certain discretionary agency decisions—barred judicial review of the agency's revocation.   The Eleventh Circuit affirmed.

*Held*: Revocation of an approved visa petition under § 1155 based on a sham-marriage determination by the Secretary is the kind of discretionary decision that falls within the purview of § 1252(a)(2)(B)(ii), which strips federal courts of jurisdiction to review certain actions "in the discretion of" the agency.   Pp. 13–19.

  (a) Section 1155 is a quintessential grant of discretion: The Secretary "may" revoke a previously approved visa petition "at any time" for what the Secretary deems "good and sufficient cause."   Such a broad grant

of authority "fairly exudes deference" to the Secretary and is similar to other statutes held to "'commi[t]'" a decision "'to agency discretion.'" *Webster* v. *Doe*, 486 U. S. 592, 600. Congress did not impose specific criteria or conditions limiting this authority, nor did it prescribe how or when the Secretary must act. Context reinforces the discretionary nature of §1155. Section 1252(a)(2)(B)(ii)'s neighboring provision, §1252(a)(2)(B)(i), bars judicial review under specific provisions, each of which contains language indicating that the decisions involved are entrusted to the discretion of the Attorney General. Section 1155 contains similar language. Pp. 13–15.

(b) Bouarfa argues that although some revocations are discretionary, the revocation here was not, so §1252(a)(2)(B)(ii) does not apply to preclude judicial review. Bouarfa contends that once the Secretary approves a petition and later determines that the beneficiary had previously entered into a sham marriage, the Secretary has no choice but to revoke the agency's approval. Neither the statutory text nor its context limits the Secretary's discretion in this way. Pp. 15–19.

(1) Contrary to Bouarfa's argument, §1154(c)'s text nowhere creates an ongoing duty for the agency to continually confirm that its initial approval was sound. Instead, §1154(c)'s command to the agency extends only to the point of approval. Turning to §1154(c)'s context, Bouarfa argues that because a noncitizen may use an approved visa petition to continue along the path toward permanent residency, Congress implicitly required the agency to continually reassess its prior approval. But nothing in the statutory scheme requires revisiting past decisions of approval; rather, each stage of the process comes with its own criteria. Indeed, the specific grant of discretion in §1155 to revoke prior approval of a visa petition forecloses the argument that Congress silently mandated revocation in certain situations. Pp. 16–17.

(2) Bouarfa's assertion that the Secretary always revokes the agency's approval of a visa petition if the agency later makes a sham-marriage determination makes no difference because Congress did not make the availability of judicial review dependent on agency practice. Rather, §1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary *by legislation*." *Kucana* v. *Holder*, 558 U. S. 233, 246–247 (emphasis added). Nor is it unreasonable to suggest that Congress created a system in which a sham-marriage determination is subject to judicial review when an agency denies a visa petition but not when the agency revokes a prior approval. That distinction "reflects Congress' choice to provide reduced procedural protection for discretionary relief." *Patel* v. *Garland*, 596 U. S. 328, 345. Pp. 17–18.

(3) Precedent, likewise, does not mandate Bouarfa's interpretation. Unlike the discretionary determination at issue in *Patel* v. *Garland*, §1155's revocation authorization has *no* "threshold requirements" to ac-

cess the relevant discretion, 596 U. S., at 332, 347, so *Patel* does not help Bouarfa. Finally, because the presumption that administrative action is subject to judicial review may be overcome by "'clear and convincing evidence' of congressional intent to preclude judicial review," *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221, 229, there is no need to resort to the presumption of reviewability where, as here, "the statute is clear," *Patel*, 596 U. S., at 347. Pp. 18–19.

75 F. 4th 1157, affirmed.

JACKSON, J., delivered the opinion for a unanimous Court.

*Samir Deger-Sen* argued the cause for petitioner. With him on the briefs were *Peter Trombly, Margaret A. Upshaw, Peter E. Davis*, and *David Stoller.*

*Colleen E. Roh Sinzdak* argued the cause for respondents. With her on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Gannon*, and *Samuel P. Go.**

JUSTICE JACKSON delivered the opinion of the Court.

A common feature of our Nation's complex system of lawful immigration is mandatory statutory rules paired with discretionary exceptions. Executive Branch agencies im-

---

*Briefs of *amici curiae* urging reversal were filed for Administrative and Immigration Law Professors by *Andrew J. Pincus* and *Daniel E. Jones*; for the American Immigrant Investor Alliance et al. by *Ira J. Kurzban* and *Edward F. Ramos*; for Former Executive Office for Immigration Review Judges by *Richard W. Mark* and *Amer S. Ahmed*; for the National Immigrant Justice Center et al. by *Victoria Dorfman, Nicole Henning, Charles Roth*, and *Julius Kairey*; and for the Northwest Immigrant Rights Project et al. by *Matt Adams, Leila Kang, Glenda M. Aldana Madrid, Aaron Korthuis, Mary Kenney, Marc Van Der Hout*, and *Johnny Sinodis.*

Briefs of *amici curiae* urging affirmance were filed for the Immigration Reform Law Institute by *Christopher J. Hajec*; and for Thomas Fuller Ogden, *pro se.*

*Cody Wofsy, Cecillia D. Wang, Lee Gelernt, David D. Cole*, and *Daniel B. Tilley* filed a brief for the American Civil Liberties Union et al. as *amici curiae.*

plement both. Whether any given agency decision is mandatory or discretionary matters, because Congress has limited judicial review of many discretionary determinations. See 66 Stat. 208, as amended, 8 U. S. C. § 1252(a)(2)(B). This case involves the Secretary of Homeland Security's decision to revoke initial approval of a visa petition that Amina Bouarfa, a U. S. citizen, filed on behalf of her noncitizen spouse.

The Secretary points to 8 U. S. C. § 1155 as the source of the agency's revocation authority; that provision states that the Secretary "may, at any time," revoke approval of a visa petition "for what he deems to be good and sufficient cause." The issue we address today is whether revocation under § 1155 qualifies as a decision "in the discretion of" the Secretary such that it falls within the purview of a separate statute—§ 1252(a)(2)(B)(ii)—that strips federal courts of jurisdiction to review certain discretionary actions. We hold that it does.

I

A

The agency decision at issue in this case occurs along the pathway to permanent legal status for a noncitizen spouse of a U. S. citizen. There is no dispute about the steps involved. A U. S. citizen kicks off the process by filing an immigrant visa petition on behalf of her spouse with the U. S. Citizenship and Immigration Services (USCIS), which exercises authority delegated by the Attorney General and Secretary of Homeland Security. § 1154(a). If USCIS approves the petition, the noncitizen may then apply for an immigrant visa to enter the country as a lawful permanent resident, §§ 1201(a), 1202(a), or, if he is already in the country, for adjustment of status, § 1255.

USCIS's decision to approve or deny a visa petition filed on behalf of a noncitizen spouse involves a number of mandatory determinations. For instance, if the agency "deter-

mines that the facts stated in the petition are true" and that the noncitizen is the petitioner's spouse, it "*shall* . . . approve the petition." § 1154(b) (emphasis added). However, as relevant here, there is also a mandatory exception: If the noncitizen "has previously been accorded" or "sought to be accorded" an immigration benefit "by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws," the agency *must* deny the petition. § 1154(c). This is known as the sham-marriage bar, and, although we have never held as much, the parties agree that judicial review under the Administrative Procedure Act (APA), 5 U. S. C. § 701 *et seq.*, is available to challenge the agency's invocation of it. See, *e. g.*, *Mendoza* v. *Secretary, Dept. of Homeland Security*, 851 F. 3d 1348, 1352, 1354–1356 (CA11 2017) (*per curiam*); *Ruiz* v. *Mukasey*, 552 F. 3d 269, 275–276 (CA2 2009).

The visa-petition-approval process for noncitizen spouses of U. S. citizens can also involve certain *non*-mandatory determinations that Congress has authorized agency officials to make. One such statutory provision is at issue here: It broadly states that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition." § 1155.[1]

We took this case to determine whether the Secretary's decision under § 1155 to revoke the agency's approval of a visa petition based on a sham-marriage determination is the kind of discretionary decision that falls within § 1252(a)(2)(B)(ii)—a jurisdiction-stripping provision. As noted above, in the immigration realm, properly identifying the mandatory or discretionary nature of a particular agency decision can be critical, precisely because that status has im-

---

[1] In a separate provision, Congress has limited the reasons why the Secretary may revoke the approval of a visa petition for some petitioners. See 8 U. S. C. § 1154(h). That provision does not limit the Secretary's discretion to revoke based on a sham-marriage determination and is therefore not relevant here.

plications for whether the agency's decision can be challenged in court. Through § 1252(a)(2)(B), Congress stripped federal courts of jurisdiction to review two categories of discretionary agency decisions. First, Congress precluded review of "any judgment regarding the granting of relief under" five listed statutory provisions that empower the Attorney General to grant certain relief to noncitizens. § 1252(a)(2)(B)(i). Second, in the provision at issue here, Congress barred review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary."[2] § 1252(a)(2)(B)(ii).

B

Amina Bouarfa is a U. S. citizen who married Ala'a Hamayel, a noncitizen and Palestinian national. They have three young children, all of whom are U. S. citizens. A few years after they married, Bouarfa filed a visa petition on Hamayel's behalf.

USCIS initially approved the petition. But two years later, the agency sent Bouarfa a Notice of Intent to Revoke its approval. The agency informed Bouarfa that it had uncovered evidence suggesting that, nearly a decade earlier, her husband had entered into a marriage for the purpose of evading immigration laws. According to the agency, during an interrogation, Hamayel's ex-wife had stated that her marriage with Hamayel had been "fraudulent" and that she had asked him for $5,000 before filing a visa petition on his behalf. App. to Pet. for Cert. 14a. The agency told Bouarfa that, had it been aware of this evidence at the time it reviewed her visa petition, it never would have approved it.

_____

[2] In certain contexts, Congress has restored judicial review over "constitutional claims or questions of law." § 1252(a)(2)(D). The parties agree that this case does not implicate that provision.

Bouarfa vigorously denied these characterizations. She pointed out that her husband's ex-wife had later recanted her statements, claiming that she had made them under duress. Nonetheless, USCIS concluded that there was "substantial and probative evidence to support a finding that" Hamayel's prior marriage "was for the purpose of conveying immigration benefits." Addendum to Brief for Petitioner 12a. Recognizing that the Secretary was permitted to "revoke the approval of any petition" "for good and sufficient cause," *id.*, at 9a, the agency decided to revoke approval of the visa petition that Bouarfa had filed on her husband's behalf.

Bouarfa appealed that revocation to the Board of Immigration Appeals, which affirmed. The Board explained that USCIS had revoked its approval because it determined that the "visa petition was approved in error" in light of § 1154(c)'s sham-marriage bar. App. 12. On *de novo* review, the Board concluded that the evidence supported USCIS's determination that Hamayel had entered into a sham marriage. The fact that such a determination would have prevented the agency from approving the petition in the first instance, the Board found, constituted "good and sufficient cause" for revocation. *Id.*, at 15.

Having struck out before the agency, Bouarfa turned to the courts. She filed an APA action in Federal District Court, arguing that the agency's revocation was "'arbitrary and capricious, an abuse of discretion and not in accordance with law'" because the agency lacked sufficient evidence to support its sham-marriage determination. App. to Pet. for Cert. 25a. The District Court granted the Government's motion to dismiss, holding that § 1252(a)(2)(B)(ii), a jurisdiction-stripping provision, barred judicial review of the agency's revocation.

In *Bouarfa* v. *Secretary, Dept. of Homeland Security*, 75 F. 4th 1157 (2023), the Eleventh Circuit affirmed. It concluded that the text of § 1155 "makes clear that the Secre-

tary's authority to revoke the approval of a petition is discretionary." *Id.*, at 1162. In the court's view, it made no difference that the agency rested its revocation on a determination that would have required the agency to deny the petition in the first instance. "[N]othing in the statute," the court reasoned, "*requires* the Secretary to revoke the approval of a petition in any circumstance, even when the Department later determines that the approval was in error." *Ibid.*

We granted certiorari to resolve a question that has split the courts of appeals: Whether federal courts have jurisdiction to review the Secretary's revocation of the agency's prior approval of a visa petition. 601 U. S. 1166 (2024).[3] Bouarfa challenges the Secretary's revocation on the assumption that the fact that her husband is not in removal proceedings does not affect the jurisdictional analysis.[4]

## II

### A

It is clear on the face of §1155 that the revocation provision is a quintessential grant of discretion to the Secretary. Once again, that provision provides that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition." §1155. As "[t]his Court has 'repeatedly observed,'" "'the word "may" *clearly* connotes discretion.'" *Biden* v. *Texas*, 597

---

[3] Two Circuits have held that federal courts may review challenges to the Secretary's revocations, at least in some situations. See *Jomaa* v. *United States*, 940 F. 3d 291, 294–296 (CA6 2019); *ANA Int'l, Inc.* v. *Way*, 393 F. 3d 886, 894 (CA9 2004). A number of other Circuits have come out the other way. See *Nouritajer* v. *Jaddou*, 18 F. 4th 85, 88 (CA2 2021) (*per curiam*); *Jilin Pharmaceutical USA, Inc.* v. *Chertoff*, 447 F. 3d 196, 205 (CA3 2006); *El-Khader* v. *Monica*, 366 F. 3d 562, 568 (CA7 2004).

[4] We therefore assume—without deciding—that §1252(a)(2)(B) applies when, as here, a noncitizen is neither in removal proceedings nor seeking review of a final order of removal.

U. S. 785, 802 (2022) (quoting *Opati* v. *Republic of Sudan*, 590 U. S. 418, 428 (2020)). Moreover, here, Congress has in no way prescribed how that discretion must be exercised. There are no conditions that the Secretary must satisfy before he can revoke the agency's approval; he may do so "at any time," for whatever reason "he deems to be good and sufficient cause." That broad grant of authority "fairly exudes deference" to the Secretary and is similar to other statutes that we have held " 'commi[t]' " a decision " 'to agency discretion.' " *Webster* v. *Doe*, 486 U. S. 592, 600 (1988) (holding that a statute permitting the agency to terminate an employee whenever it " '*deem[s]* such termination necessary or advisable in the interests of the United States' " was discretionary).

Context reinforces what the text makes plain. Section 1252(a)(2)(B)(ii)'s neighboring provision, § 1252(a)(2)(B)(i), bars judicial review of determinations under five statutory provisions that address "different form[s] of discretionary relief from removal." *Kucana* v. *Holder*, 558 U. S. 233, 246 (2010). Each of those provisions "contains language indicating that the decision is entrusted to the Attorney General's discretion." *Ibid.*; see, *e. g.*, § 1229b(a) ("The Attorney General may cancel removal . . . "); § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States . . . "). Section 1155 contains similar language.

Indeed, many of the undoubtedly discretionary provisions listed in § 1252(a)(2)(B)(i) vest *less* discretion in the Attorney General than § 1155 vests in the Secretary. The Attorney General may, for instance, cancel removal for a permanent resident *only* if he determines that the noncitizen has been a lawful permanent resident for at least five years, has continually resided in the United States for at least seven years, and has not been convicted of an aggravated felony. § 1229b(a). He may exercise his discretion to waive the consequences of a fraud determination that would otherwise bar

relief only if failing to do so "would result in extreme hard-ship" to the noncitizen's family members or, in certain situations, the noncitizen. §1182(i)(1). And he has discretion to adjust a noncitizen's status only if he first confirms that certain preconditions have been satisfied. §1255(a). When it comes to the Secretary's discretion to revoke the agency's approval of a visa petition, though, Congress imposed no such threshold requirements. If the provisions listed in §1252(a)(2)(B)(i) pertain to discretionary agency determinations, surely §1155 does too.

That discretion is a two-way street. By granting the Secretary discretion to revoke the agency's approval of visa petitions, Congress has also vested the Secretary with discretion to *decline* to revoke an approval the agency previously gave. So, if the Secretary determines that the agency's approval of a visa petition was erroneous, he can revoke that approval— or he can let the error stand. As a general matter, then, this discretion may work to the benefit of visa-petition beneficiaries, since rather than tying the agency's hands by forcing revocation, Congress created "room for mercy." *Patel* v. *Garland*, 596 U. S. 328, 331 (2022).

In any event, when the Secretary opts to revoke a petition that he determines should not have been approved in the first place, the petitioner is not out of options. As the Government concedes, nothing prohibits a citizen from filing another petition on behalf of the same relative. Brief for Respondents 3. Indeed, Bouarfa has already taken advantage of that alternative here. After the Secretary revoked the agency's approval of her petition, Bouarfa filed another one. That petition is still pending, and if it is denied due to the agency's sham-marriage determination, Bouarfa can seek judicial review of *that* determination.

B

Bouarfa disputes hardly any of this. She concedes that some revocations are discretionary for purposes of §1252(a)

(2)(B)(ii). But she argues that this particular revocation was not. In Bouarfa's view, if the Secretary approves a visa petition and later determines that the beneficiary had previously entered into a sham marriage, the Secretary has no choice but to revoke the agency's approval. We cannot agree. Nothing in the statute's text or context limits the Secretary's discretion in this way.

1

Bouarfa's textual argument rests on § 1154(c), which she argues creates an ongoing duty for the agency to continually confirm that its prior approval was sound. Section 1154(c) commands that "no petition shall be approved" if the Attorney General makes a sham-marriage determination. According to Bouarfa, we should interpret this provision as directing that "no petition shall be approved *or remain approved*" if a sham-marriage determination is made.

The problem for Bouarfa's argument is that § 1154(c) nowhere suggests that its command extends beyond the point of approval. Nothing in the provision mentions revocation. And we need not guess in what situations Congress wanted the Secretary to revoke the agency's approval, because Congress answered that question directly: The Secretary "may" do so whenever he "deems" there to be "good and sufficient cause." § 1155. This specific grant of discretion to revoke forecloses the argument that Congress silently mandated revocation in certain situations.

Turning to context, Bouarfa argues that, because a noncitizen may use an approved visa petition to continue along the path toward lawful permanent residency, Congress implicitly required the agency to continually reassess whether its prior approval was in error. But nothing about the statutory scheme requires the agency to revisit its past decisions. Instead, each stage of the process comes with its own criteria.

See, *e. g.*, § 1255 (adjustment of status); § 1182 (visa eligibility).  Of course, if the Secretary determines at any point along the way that the agency's prior approval of a visa petition was erroneous, he can exercise his discretion to revoke it.  Under Bouarfa's interpretation, the Secretary would be *required* to do so any time he determined that the agency made a mistake—no matter the circumstance.  Congress, however, left that decision to the Secretary.  The agency's *mea culpa* may—but need not—result in the noncitizen losing his ability to gain permanent residency.

2

With text and context against her, Bouarfa turns to agency practice.  She contends that, as a practical matter, the Secretary always revokes the agency's approval of a visa petition if the agency later makes a sham-marriage determination.  That may be true.  At oral argument, the Government was unable to identify a single instance in which the agency declined to revoke its approval after determining that the beneficiary had entered into a sham marriage.  Tr. of Oral Arg. 38.  But Congress did not make the availability of judicial review dependent on agency practice. Rather, § 1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary *by legislation.*"  *Kucana*, 558 U. S., at 246–247 (emphasis added).  Furthermore, the fact that the agency appears to be exercising its revocation discretion consistently is a virtue, not a vice.  Bouarfa's use-it-or-lose-it theory of agency discretion creates perverse incentives, encouraging an agency to act arbitrarily (by revoking some approvals after a sham-marriage finding while maintaining others) or risk losing congressionally granted insulation from judicial review.

Nor is it unreasonable, as Bouarfa protests, to suppose that Congress created a system in which a sham-marriage determination is reviewable if it is the reason for the agency's

denial of a petition, but not if it is the reason for the agency's revocation. That distinction "reflects Congress' choice to provide reduced procedural protection for discretionary relief." *Patel*, 596 U. S., at 345. In the interest of finality, Congress vested the Secretary with the discretion to allow the agency's mistakes to inure to the benefit of the noncitizen. At the same time, Congress did not want this discretion to open up a new source of litigation. Cf. *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221, 230 (2020) (observing Congress's goal of "'consolidat[ing] judicial review of immigration proceedings into one action'" (quoting *INS* v. *St. Cyr*, 533 U. S. 289, 313 (2001)). "[T]he context in which" the agency makes the sham-marriage determination thus "explains the difference in protection afforded." *Patel*, 596 U. S., at 345.[5]

3

Finally, our precedent does not mandate Bouarfa's interpretation. In *Patel*, we held that § 1252(a)(2)(B)(i) precludes judicial review of factual findings that underlie a denial of discretionary relief—including when those findings are "threshold requirements established by Congress" to access the relevant discretion. *Id.*, at 332, 347. In concluding that § 1252(a)(2)(B)(i) reaches those threshold determinations, we relied on the fact that the provision prohibits judicial review of "*any* judgment *regarding* the granting of relief" under the enumerated provisions. *Id.*, at 338. Bouarfa argues that, because the jurisdiction-stripping provision at issue here

_____

[5] Bouarfa protests that this creates a loophole through which the agency can insulate itself from judicial review by granting petitions it is supposed to deny and then subsequently revoking its approval. But she points to no evidence suggesting that the agency has done so in this case or any other. Nor has she alleged that the agency violated constitutional or procedural requirements when it revoked her petition. We express no view as to whether a lawsuit with such allegations would be reviewable.

lacks similar language, its scope must be narrower. But even assuming that is true, that does not help Bouarfa here, because unlike the discretionary determination at issue in *Patel*, §1155's revocation authorization has *no* threshold requirements. We therefore need not resolve whether §1252(a)(2)(B)(ii) strips courts of jurisdiction to review threshold determinations that the agency must make before exercising discretion.

Bouarfa also leans on the general "presumption" that administrative action is subject to judicial review. See *Guerrero-Lasprilla*, 589 U. S., at 229. But that presumption may be overcome by "'clear and convincing evidence' of congressional intent to preclude judicial review." *Ibid.* (quoting *Reno* v. *Catholic Social Services, Inc.*, 509 U. S. 43, 64 (1993)). Section 1252(a)(2)(B)(ii)—"which is, after all, a jurisdiction-stripping statute," *Patel*, 596 U. S., at 347— clearly expresses Congress's desire to preclude judicial review of the Secretary's discretionary revocation of an approved visa petition. "Because the statute is clear, we have no reason to resort to the presumption of reviewability." *Ibid.*

\*  \*  \*

In §1155, Congress granted the Secretary broad authority to revoke an approved visa petition "at any time, for what he deems to be good and sufficient cause." Such a revocation is thus "in the discretion of" the agency. §1252(a)(2)(B)(ii). Where §1252(a)(2)(B)(ii) applies, then, it bars judicial review of the Secretary's revocation under §1155. Therefore, we affirm the judgment of the Court of Appeals.

*It is so ordered.*

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None