# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2485
_____

Abrahim Mohamed Fofana,

*Plaintiff - Appellee,*

v.

Kristi Noem, in her official capacity as Secretary of the United States Department of Homeland Security; Angelica Alfonso-Royals, in her official capacity as Acting Director of the United States Citizenship and Immigration Services; Connie Nolan, in her official capacity as Associate Director, Service Center Operations, United States Citizenship and Immigration Services; Steven G. Rice, Director, Minneapolis St Paul Field Office, U.S. Citizenship and Immigration Services; United States Citizenship and Immigration Service,

*Defendants - Appellants.*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2025
Filed: January 9, 2026
_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

COLLOTON, Chief Judge.

Abrahim Fofana, a native and citizen of Liberia, sued the Secretary of Homeland Security and others to challenge the denial of his application for adjustment of status to lawful permanent resident. The district court concluded that the government's action was arbitrary and capricious, and granted summary judgment for Fofana. We conclude that the district court lacked jurisdiction to review the Secretary's decision, so we reverse the judgment.

I.

Fofana tried to enter the United States with fraudulent documents on January 28, 2001. When he later applied for asylum, Fofana disclosed that he had raised money for the United Liberation Movement of Liberia for Democracy (ULIMO) while he was a student in Saudi Arabia, and that he was "an active supporter of the ULIMO fighters." Fofana claimed that if he returned to Liberia, he would face persecution on account of his affiliation with ULIMO. In April 2001, an immigration judge granted the application for asylum.

On July 22, 2002, Fofana filed an application for adjustment of status to become a lawful permanent resident. The Secretary of Homeland Security may, in her discretion, adjust the status of an alien granted asylum if the alien meets five statutory criteria, including that the alien "is admissible . . . as an immigrant." 8 U.S.C. § 1159(b). The United States Citizenship and Immigration Services, acting for the Secretary, denied the application in June 2018. The USCIS determined that Fofana was inadmissible because he had solicited money for ULIMO, a Tier III terrorist organization. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(I), (a)(3)(B)(iv)(IV)(cc).

Fofana sued in the district court, alleging that the USCIS was precluded from declaring him inadmissible and that the agency's decision was arbitrary and

capricious. The district court ruled for Fofana based on collateral estoppel, but this court reversed and remanded. *Fofana v. Mayorkas*, 4 F.4th 668 (8th Cir. 2021).

On remand, the district court again granted summary judgment for Fofana. First, the district court rejected the government's argument that the court lacked jurisdiction to review the Secretary's decision. Second, the court concluded that Fofana was not inadmissible for "engag[ing] in *a* terrorist activity," even though soliciting funds for a terrorist organization is defined as "engag[ing] in terrorist activity," because a separate definition of "terrorist activity" does not encompass solicitation of funds. *See* 8 U.S.C. § 1182(a)(3)(B)(i)(I), 1182(a)(3)(B)(iii). Third, the court concluded alternatively that the agency's determination that ULIMO was a terrorist organization was arbitrary and capricious because the agency did not address whether the organization's violent activities were authorized by its leadership. As a final alternative, the district court concluded that the record did not support the agency's finding that Fofana knew or should have known that ULIMO was engaged in terrorist activity. The court thus ordered the case returned to the USCIS for reconsideration.

## II.

On appeal, the government argues that the district court lacked jurisdiction to review the Secretary's decision on whether Fofana is inadmissible. Congress has circumscribed judicial review of the discretionary-relief process in immigration cases. The governing jurisdictional statute provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review--

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) *any other decision or action of* the Attorney General or *the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of* the Attorney General or *the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

Clause (ii) is at issue in this case. The statute governing Fofana's application for adjustment of status provides that "[t]he Secretary of Homeland Security or the Attorney General, *in the Secretary's or the Attorney General's discretion* and under such regulations as the Secretary or Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum." 8 U.S.C. § 1159(b) (emphasis added).

Fofana acknowledges that clause (ii) precludes judicial review of the Secretary's ultimate discretionary decision to deny an adjustment of status. He maintains, however, that § 1159(b) contemplates a two-step process under which the Secretary first makes a non-discretionary determination about whether the alien has satisfied the five eligibility criteria for adjustment, and then makes a discretionary decision whether to adjust the alien's status. On his view, the court has jurisdiction to review the first determination and lacks jurisdiction only with respect to the second.

The Supreme Court has not resolved this question, *see Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024), but the decision in *Patel v. Garland*, 596 U.S. 328, 336 (2022), is enlightening. The Court held that the phrase "any judgment regarding the granting of relief" under § 1255 in clause (i) applies not only to the ultimate judgment to grant or deny relief, but also to nondiscretionary determinations that are necessary in determining whether an applicant is eligible for relief. *Id*. at 338-39. The breadth of

the term "any" shows that the phrase "any judgment" means "judgments of whatever kind under § 1255, not just discretionary judgments or the last-in-time judgment." *Id.* at 338.

*Patel* concerned clause (i), but the analysis informs the meaning of clause (ii). Clause (i) enumerates certain decisions that are insulated from judicial review, and "Congress added in clause (ii) a catchall provision covering 'any other decision . . . the authority for which is specified under this subchapter [to be in the discretion of the Secretary].'" *Kucana v. Holder*, 558 U.S. 233, 246 (2010). "The proximity of clauses (i) and (ii), and the words linking them—'any other decision'—suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation." *Id*. at 246-47. "The clause (i) enumeration . . . is instructive in determining the meaning of the clause (ii) catchall." *Id.* at 247.

Fofana argues that while Congress broadly precluded judicial review of "any judgment"—discretionary or non-discretionary—regarding the granting of relief under the sections enumerated in clause (i), the catchall reference to "any other decision or action" in clause (ii) refers only to *discretionary* decisions or actions. This contention is unpersuasive. We agree with Judge Liman that the phrase "any other decision or action" is at least as broad as "any judgment." *Morina v. Mayorkas*, No. 22-cv-02994, 2023 WL 22617, at *10 (S.D.N.Y. Jan. 3, 2023). "Any judgment" means "judgments of whatever kind," *Patel*, 596 U.S. at 338, and "any other decision" thus naturally means decisions "of whatever kind"—not just discretionary decisions or last-in-time decisions. The authority for the decision whether to adjust Fofana's status is "specified under [the] subchapter to be in the discretion of . . . the Secretary," 8 U.S.C. § 1252(a)(2)(B)(ii), so the entire decision whether to adjust status—including the decision on whether Fofana is eligible—is insulated from judicial review.

Fofana argues that clause (ii) is narrower because it does not employ the broadening effect of the word "regarding" that is used in clause (i). The Court in *Patel* concluded that because clause (i) refers to any judgment "regarding" the granting of relief under certain sections, the clause "encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief." 596 U.S. at 339.

Clause (ii) is not narrower; it is just phrased differently. Clause (i) uses the phrase "regarding the granting of relief" to define the type of judgment that is not reviewable. Clause (ii) specifies in a different manner the type of decision or action that is not reviewable—a decision or action "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Where, as with adjustment of status, the statute specifies that the authority to grant relief is in the discretion of the Secretary, clause (ii) insulates the decision from judicial review. *Patel* establishes that the unreviewable decision—"any decision," like "any judgment"—is not limited to a final discretionary decision but includes the Secretary's decision on all aspects of the application for adjustment. *See id*. As with clause (i), if Congress intended to limit the jurisdictional bar in clause (ii) to "discretionary decisions," then "it could easily have used that language—as it did elsewhere in the immigration code." *Id*. at 341.

Fofana points to *Bremer v. Johnson*, 834 F.3d 925 (8th Cir. 2016), where this court cited prior circuit authority and said that "[e]ven where a statute precludes judicial review of discretionary agency actions, courts may review certain non-discretionary legal determinations that underlie an agency's exercise of unreviewable discretion." *Id*. at 929 (citing *Ibrahimi v. Holder*, 566 F.3d 758, 763-64 (8th Cir. 2009) and *Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008)). *Bremer* concerned a provision of the Adam Walsh Act that says a citizen generally "may file" a petition seeking immediate relative status for a spouse. 8 U.S.C. § 1154(a)(1)(A)(i). That clause and the right to file a petition, however, "shall not apply to a citizen of

the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed." *Id*. § 1154(a)(1)(A)(viii). This court held that the district court had jurisdiction to resolve whether the Act and its conferral of a right to file a petition applied at all to Bremer's petition or whether it was inapplicable because a petition already had been filed. 834 F.3d at 929.

*Bremer* is not controlling here, because the "predicate legal question" at issue in that case did not concern a "decision" by the Secretary to allow or disallow the filing of a petition under § 1154(a)(1)(A)(i). The disputed issue was whether the fact that a petition already had been filed meant that there was no decision for the Secretary to make. Insofar as prior decisions or language in *Bremer* regarding jurisdiction to make "non-discretionary legal determinations" suggested a broader declaration, we clarify here the proper analysis in light of the Supreme Court's intervening decision in *Patel*.

For these reasons, the judgment of the district court is reversed, and the case is remanded with directions to dismiss the complaint for lack of jurisdiction.

_____