**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

AGNES MUKANTAGARA;
EBENEZER SHYAKA,

    Plaintiffs - Appellants,

v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security;
U.S. DEPARTMENT OF
HOMELAND SECURITY; U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES; MICHAEL CRABTREE,
USCIS Field Office Director, Salt
Lake City; ANDREW LAMBRECHT,
USCIS District Office Director,
Denver; KIKA SCOTT, senior official
performing the duties of the Director,

    Defendants - Appellees.

No. 24-4071

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:20-CV-00897-RJS)**

_____

Daniel R. Black (Marti L. Jones with him on the briefs), of Stowell Crayk,
PLLC, Millcreek, Utah, for Plaintiffs-Appellants.

Aneesa Ahmed, Trial Attorney (Yaakov Roth, Acting Assistant Attorney
General; August E. Flentje, Acting Director; William C. Silvis, Assistant
Director; Katelyn Masetta-Alvarez, Senior Litigation Counsel; and Joshua C.
McCroskey, Trial Attorney, with her on the brief), Department of Justice,
Washington, D.C., for Defendants-Appellees.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Agnes Mukantagara and her son Ebenezer Shyaka sued United States Citizenship and Immigration Services for terminating Mukantagara's refugee status. The district court dismissed their suit for lack of subject-matter jurisdiction. It relied on 8 U.S.C. § 1252(a)(2)(B)(ii), which bars courts from reviewing immigration agencies' discretionary actions. It held that § 1252(a)(2)(B)(ii) applied to 8 U.S.C. § 1157(c)(4), the Immigration and Nationality Act's provision for terminating refugee status.

We hold that 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to Mukantagara and her son's suit. Termination of refugee status under § 1157(c)(4) involves two steps. The first step is a nondiscretionary eligibility determination— whether the noncitizen met the INA's definition of "refugee" when admitted into the country. The second step is an exercise of discretion—the agency chooses whether to terminate the eligible noncitizen's status. Because the first step is nondiscretionary, § 1252(a)(2)(B)(ii) does not apply. So Mukantagara and her son can sue USCIS over its nondiscretionary eligibility determination under § 1157(c)(4). We remand to the district court for further proceedings.

2

## BACKGROUND

### I.    Factual Background

In 2005, USCIS admitted Agnes Mukantagara as a refugee and her son Ebenezer Shyaka as her minor dependent. Two years later, USCIS paused Mukantagara's refugee status and revoked her travel documents. By 2008, USCIS had begun investigating whether Mukantagara had participated in the Rwandan genocide. In 2016, USCIS decided that she had.

For this, USCIS terminated Mukantagara's refugee status under 8 U.S.C. § 1157(c)(4). That provision allows USCIS to terminate a person's refugee status if it finds that the person did not meet the INA's definition of "refugee" when admitted into the United States. Because USCIS found that Mukantagara had participated in the genocide, she fell under the "persecutor bar" and thus did not qualify as a refugee. App. vol. I at 81; *see* 8 U.S.C. § 1101(a)(42). The government then placed Mukantagara and her son into removal proceedings.

Mukantagara denied that she participated in the genocide. She claimed that USCIS parroted false allegations from a politically motivated organization acting on behalf of Rwanda's ruling party.

In removal proceedings, the immigration court found Mukantagara credible and granted her asylum application. It rejected the government's allegations that Mukantagara had participated in the genocide.

But the immigration court denied asylum to Mukantagara's son, Shyaka. It ruled that Shyaka neither independently qualified for asylum nor qualified as

3

Mukantagara's dependent, even though he had qualified as her dependent in 2005. Shyaka was then under age twenty-one. By the time Mukantagara applied for asylum in removal proceedings more than ten years later, Shyaka had aged out of eligibility.

The parties appealed to the Board of Immigration Appeals. The BIA remanded the immigration court's decision granting asylum to Mukantagara and affirmed the decision denying asylum to Shyaka. On remand, the immigration court granted Mukantagara asylum again. For his part, Shyaka petitioned for review before this Court. The BIA abated the government's appeal of the immigration court's second grant of asylum to Mukantagara, and we abated Shyaka's petition for review, pending the outcome in this case.

## II.    Procedural History

Mukantagara and her son sued USCIS under the Administrative Procedure Act, challenging its decision to terminate Mukantagara's refugee status. *See Mukantagara v. DHS*, 67 F.4th 1113, 1115 (10th Cir. 2023). The government moved to dismiss for lack of subject-matter jurisdiction under 8 U.S.C. § 1252(b)(9), *see id.*, which channels judicial review of actions related to final removal orders to the courts of appeal, *see generally Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483 (1999). The district court granted the government's motion. *Mukantagara v. DHS*, 67 F.4th at 1116. We reversed,

4

holding that § 1252(b)(9) did not apply because USCIS's decision to terminate refugee status was not part of removal proceedings. *Id.*

On remand, USCIS again moved to dismiss. *Mukantagara v. Mayorkas*, 736 F. Supp. 3d 1117, 1122 (D. Utah 2024). USCIS made three arguments: (1) that 8 U.S.C. § 1252(a)(2)(B)(ii) deprived the district court of subject-matter jurisdiction, (2) that Mukantagara could not challenge USCIS's termination of her refugee status under the APA because that statute bars review of both discretionary and non-final agency actions, and (3) that three of Mukantagara's claims failed as a matter of law. *Id.* at 1122–23. The district court agreed with the government's first argument.[1] *Id.* at 1125–26. Mukantagara and her son appeal that order.

## JURISDICTION

We have jurisdiction under 28 U.S.C. § 1291 because the district court entered judgment in favor of defendants. As for subject-matter jurisdiction, "[w]e have jurisdiction to determine our jurisdiction." *Schroeck v. Gonzales*, 429 F.3d 947, 950 (10th Cir. 2005).

## STANDARD OF REVIEW

We review de novo a district court's dismissal for lack of subject-matter jurisdiction. *Breeze Aviation Grp., Inc. v. Nat'l Mediation Bd.*, 104 F.4th 1211, 1217 (10th Cir. 2024). The party seeking the court's jurisdiction bears the

---

[1] We follow the parties' request to avoid ruling on the arguments that the district court did not address.

5

burden of showing it exists. *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010).

## DISCUSSION

We must decide whether 8 U.S.C. § 1252(a)(2)(B)(ii) strips the district court of subject-matter jurisdiction to hear Mukantagara and her son's suit.

We first consider 8 U.S.C. § 1157(c)(4), the provision under which USCIS terminated Mukantagara's refugee status. As we interpret it, that provision provides a two-step process. At step one, USCIS evaluates whether the noncitizen meets the statute's eligibility requirement of not being a "refugee" when admitted into the United States.[2] At step two, USCIS has discretion to terminate the refugee status of any noncitizen who is eligible at step one. After that, we consider whether the INA's jurisdiction-stripping provision at 8 U.S.C. § 1252(a)(2)(B)(ii) covers a district court's review of USCIS's eligibility determination at the above step one. We conclude that § 1252(a)(2)(B)(ii) applies only to discretionary actions and that the eligibility determination under § 1157(c)(4)'s step one is not discretionary.

As part of that analysis, we consider the government's argument that *Patel v. Garland*, 596 U.S. 328 (2022), precludes the above-stated interpretation of § 1252(a)(2)(B)(ii) and § 1157(c)(4). We note that *Patel*

---

[2] We use the term "noncitizen" in this opinion because Mukantagara uses it. For our purposes, it is synonymous with the statutory term "alien." *See* 8 U.S.C. § 1101(a)(3); *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (using "noncitizen").

interprets § 1252(a)(2)(B)(i), a separate part of the INA's jurisdiction-stripping provision, which operates differently than § 1252(a)(2)(B)(ii).

We then consider the government's arguments that *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024), and recent circuit-court decisions show that § 1252(a)(2)(B)(ii) precludes the district court from reviewing Mukantagara and her son's suit. We conclude that those cases do not speak to the issue presented here.

## I.     Section 1252(a)(2)(B)(ii) does not apply to § 1157(c)(4)'s nondiscretionary first step.

The INA strips jurisdiction from courts to review "(i) any judgment regarding" five listed kinds of immigration relief and "(ii) any other decision or action [of USCIS] the authority for which is specified under this subchapter to be in the discretion of [USCIS]." 8 U.S.C. § 1252(a)(2)(B). The district court ruled that § 1252(a)(2)(B)(ii) covers determinations made under § 1157(c)(4). *Mukantagara v. Mayorkas*, 736 F. Supp. 3d at 1126. But that sweeps in § 1157(c)(4)'s nondiscretionary eligibility determination—whether the noncitizen met the INA's definition of "refugee" when admitted. So we hold that § 1252(a)(2)(B)(ii) does not remove the district court's subject-matter jurisdiction to resolve Mukantagara and her son's suit over USCIS's eligibility determination.

We first identify § 1157(c)(4)'s two-step process. At the first step, USCIS determines whether a noncitizen's refugee status is eligible for

7

termination. For this step, we must also ask whether the jurisdictional bar found at § 1252(a)(2)(B)(ii) defeats a district court's ability to review USCIS's determination. There we are guided by other courts' opinions holding that § 1252(a)(2)(B)(ii) does not preclude review of nondiscretionary eligibility determinations for two other provisions: Temporary Protected Status and refugee adjustment of status. From that, we hold that § 1252(a)(2)(B)(ii) does not apply here.

A.   **Section 1157(c)(4) contains a nondiscretionary eligibility determination.**

Our first task is to interpret 8 U.S.C. § 1157(c)(4). We begin with the words in the statute. *Smith v. Bd. of Governors of Fed. Rsrv. Sys.*, 73 F.4th 815, 820 (10th Cir. 2023). We ask if the language "has a plain and unambiguous meaning with regard to the particular dispute." *Id.* (citation omitted).

Section 1157(c)(4) says:

> The refugee status of any alien (and of the spouse or child of the alien) may be terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe if the Attorney General determines that the alien was not in fact a refugee within the meaning of section 1101(a)(42) of this title at the time of the alien's admission.

The district court ruled "the decision to terminate refugee status under § 1157(c)(4)" is within USCIS's discretion. *Mukantagara v. Mayorkas*, 736 F. Supp. 3d at 1126.

We disagree in part. As we read § 1157(c)(4), it sets forth a two-step process. First, USCIS determines whether "the alien was not in fact a refugee

8

[under 8 U.S.C. § 1101(a)(42)] at the time of the alien's admission." 8 U.S.C. § 1157(c)(4). Second, if that is so, USCIS has discretion to terminate that person's refugee status.[3] *Id.*

When the INA directs immigration agencies to assess "statutory eligibility criteria" in a first step before exercising discretion in a second, the first step is "not discretionary." *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024). Section 1157(c)(4)'s first step requires the agency to assess eligibility before deciding to terminate refugee status. *See Maiwand v. Gonzales*, 501 F.3d 101, 106 (2d Cir. 2007) ("Refugee status may be terminated *only if* . . . [the] alien did not qualify as a refugee at the time of entry." (emphasis added)); *Kaganovich v. Gonzales*, 470 F.3d 894, 898 (9th Cir. 2006) (similar); *Romanishyn v. Att'y Gen. of U.S.*, 455 F.3d 175, 181–82 (3d Cir. 2006) (similar). Section 1157(c)(4)'s first step is nondiscretionary.

The government argues that all determinations under § 1157(c)(4) are discretionary because the provision uses several words that suggest discretion: "may prescribe," "may be terminated," and "if the [agency] determines." It also notes that the provision does not contain words like "shall."

---

[3] USCIS has removed its discretion at the second step by promulgating 8 C.F.R. § 207.9, which states that refugee status "will be terminated" if the agency determines that the noncitizen is not eligible on the first step. This does not affect our analysis because 8 U.S.C. § 1252(a)(2)(B)(ii) applies "only when the statute itself" specifies that an action is discretionary. *See Kucana v. Holder*, 558 U.S. 233, 243–45 (2010).

But we read sentences "as a whole." *See Harbison v. Bell*, 556 U.S. 180, 196 (2009) (Roberts, C.J., concurring). The first two phrases don't relate to the first-step determination. "[M]ay prescribe" refers to the agency's power to pass regulations relating to the statute. 8 U.S.C. § 1157(c)(4). "May be terminated" gives the agency power to decline to terminate status at step two. *Id.*

And we reject that the words "if the [agency] determines" reveal discretion. Even the government concedes that when terminating refugee status, USCIS "*must* 'choose' or 'decide'" the eligibility question. *See* Resp. Br. at 19 (emphasis added). It has not argued that USCIS could skip step one when deciding to terminate a person's refugee status. So step one is a nondiscretionary eligibility determination and a threshold requirement before moving to step two.

**B.    Section 1252(a)(2)(B)(ii) does not strip jurisdiction for district courts to review eligibility determinations.**

Next, we decide whether the INA's jurisdiction-stripping provision at § 1252(a)(2)(B)(ii) applies at the nondiscretionary first step of § 1157(c)(4). We hold that it does not, based on persuasive precedent interpreting similar provisions in the INA—those that govern Temporary Protected Status (TPS), 8 U.S.C. § 1254a, and adjustment of status for refugees, *id.* § 1159(b).

**1.    The Two-Step Process for Granting TPS**

The INA's two-step process for adjudicating TPS goes like this: First, USCIS determines whether the applicant meets the requirements, such as

physical presence in the United States and admissibility. *See* 8 U.S.C.
§ 1254a(c)(1). Second, if so, USCIS may exercise discretion by granting the
application. *Id.* § 1254a(a)(1)(A).

In *Mejia Rodriguez v. DHS*, the Eleventh Circuit held that district courts
have jurisdiction to review the first step of USCIS's TPS decisions. 562 F.3d
1137, 1146 (11th Cir. 2009). Mejia Rodriguez was denied TPS because USCIS
concluded that he didn't meet the eligibility requirements. *Id.* at 1141, 1144. So
he sued USCIS under the APA, and the district court dismissed for lack of
jurisdiction under § 1252(a)(2)(B)(ii). *See id.* at 1141. The Eleventh Circuit
reversed, holding that § 1252(a)(2)(B)(ii) did not bar district courts from
reviewing USCIS's "*non-discretionary,* statutory eligibility decisions." *Id.* at
1144–45.

### 2.    The Two-Step Process for Refugee Adjustment of Status

The same two-step process applies to the provision allowing refugees to
become permanent residents. First, USCIS determines whether an applicant
meets the statute's requirements, such as physical presence in the United States
and admissibility. 8 U.S.C. § 1159(b)(2), (5). Second, USCIS may exercise
discretion by granting the refugee's application. *Id.* § 1159(b).

In *Hosseini v. Johnson*, the Sixth Circuit held that the first step is
reviewable in district court. 826 F.3d 354, 358–59 (6th Cir. 2016). USCIS
denied Hosseini's application to adjust status because it found that he was
inadmissible. *Id.* at 357, 359. Hosseini sued USCIS under the APA, challenging

11

this determination. *Id.* at 357. The district court asserted jurisdiction over the claim despite § 1252(a)(2)(B)(ii), but it dismissed the claim on a separate APA-related ground. *Id.*

The Sixth Circuit affirmed that § 1252(a)(2)(B)(ii) does not bar district courts from reviewing USCIS's eligibility determination. *Id.* at 358–59. It reasoned that "eligibility determinations" that lead to discretionary decisions are "non-discretionary" and thus "subject to judicial review." *Id.* at 359.[4]

### 3.    The Two-Step Process for Refugee-Status Termination

We now return to Mukantagara's suit. First, USCIS determined that Mukantagara "was not in fact a refugee" under § 1101(a)(42) when she was admitted to the United States. *See* 8 U.S.C. § 1157(c)(4). Second, USCIS terminated Mukantagara's and her dependents' refugee status as required by its regulation. *See* 8 C.F.R. § 207.9. Mukantagara sued USCIS to challenge its determination that she was statutorily subject to termination. Mejia Rodriguez and Hosseini sued USCIS to challenge its determinations that they were not statutorily eligible for benefits. For the same reason § 1252(a)(2)(B)(ii) did not preclude jurisdiction in those two cases, it does not preclude jurisdiction over Mukantagara's challenge.

---

[4] In *Abuzeid v. Mayorkas*, the D.C. Circuit suggested that *Patel v. Garland*, 596 U.S. 328 (2022), abrogated *Hosseini*. 62 F.4th 578, 584 n.4 (D.C. Cir. 2023). We disagree for reasons explained below. Briefly, *Hosseini* interpreted § 1252(a)(2)(B)(ii), unlike *Patel*, which interpreted § 1252(a)(2)(B)(i), *see* 596 U.S. at 336–37, 344–45.

12

## II.    *Patel* does not apply to § 1252(a)(2)(B)(ii).

The government argues that *Patel v. Garland* prevents district courts from reviewing USCIS's first-step decisions. It argues that § 1252(a)(2)(B)(ii) precludes review of a nondiscretionary first step when the INA gives the agency discretion for a later step of the same procedure. But *Patel* interprets a separate provision of the INA, § 1252(a)(2)(B)(i).

In *Patel*, the Supreme Court held that § 1252(a)(2)(B)(i) bars review of an immigration court's factual findings regarding non-refugee adjustment of status in removal proceedings. 596 U.S. at 347. Patel had applied for non-refugee adjustment of status in removal proceedings. *Id.* at 334. The immigration court concluded that Patel was ineligible to adjust because he had lied about his immigration status by marking that he was a citizen on a form for a driver's license. *Id.* at 334–35. Patel argued that he had made an honest mistake. *Id.* But the immigration court found that Patel was not credible. *Id.* So it denied Patel's application to adjust status, then ordered him removed. *Id.*

Patel appealed the immigration court's ruling to the Eleventh Circuit. That court held that § 1252(a)(2)(B)(i) removed its jurisdiction to review the immigration court's factual findings. *Patel v. Att'y Gen. of U.S.*, 971 F.3d 1258, 1272–73, 1283 (11th Cir. 2020) (en banc). Section 1252(a)(2)(B)(i) bars review of "any judgment regarding the granting of relief" for five listed kinds of relief, including that relief Patel sought: non-refugee adjustment of status. *See id.* at 1273. The Eleventh Circuit held that the immigration court's credibility finding

was a "judgment regarding the granting of relief." *Id.* The Supreme Court affirmed. 596 U.S. at 331.

*Patel* does not shed light on § 1252(a)(2)(B)(ii) because its holding rests on words particular to § 1252(a)(2)(B)(i)—"any judgment" and "regarding the granting of relief." 596 U.S. at 337–39; *see Alzaben v. Garland*, 66 F.4th 1, 6 (1st Cir. 2023) (*Patel's* interpretation of "any judgment" in § 1252(a)(2)(B)(i) "does not directly address the scope" of § 1252(a)(2)(B)(ii)). The Court interpreted "any judgment" to mean "judgments of whatever kind . . . not just discretionary judgments or the last-in-time judgments." *Patel*, 596 U.S. at 338–39 (citation modified). It interpreted the phrase "regarding the granting of relief" as "broadening" § 1252(a)(2)(B)(i) to cover eligibility determinations. *Id.* at 338–39 (citation omitted).

Instead of "regarding the granting of relief," § 1252(a)(2)(B)(ii) uses the phrase "specified . . . to be in the [agency's] discretion." *Patel* held that "regarding" broadens § 1252(a)(2)(B)(i) to reach judgments "*relating to* the granting of relief." 596 U.S. at 339. The word "specified" narrows § 1252(a)(2)(B)(ii) to reach only actions and decisions involving discretion.

The government argues that both § 1252(a)(2)(B) subsections travel together. It points to *Kucana v. Holder*, which mentions that § 1252(a)(2)(B)(i) "is instructive in determining the meaning of the [§ 1252(a)(2)(B)(ii)] catchall." 558 U.S. 233, 247 (2010). But the Court has cautioned that when two neighboring provisions "contain distinct language," those provisions don't

14

"necessarily travel together." *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 n.3 (2023). And even after *Patel*, the Eleventh Circuit has reiterated that district courts may review "a non-discretionary determination that is a statutory predicate to [an agency's] exercise of discretion." *See Bouarfa v. Sec'y DHS*, 75 F.4th 1157, 1163 (11th Cir. 2023) (citing *Mejia Rodriguez*, 562 F.3d at 1143).

### III.   *Bouarfa* does not apply to § 1157(c)(4).

The government argues that the Supreme Court's decision in *Bouarfa* requires holding that § 1252(a)(2)(B)(ii) bars review here.

In *Bouarfa*, the Court held that § 1252(a)(2)(B)(ii) bars a district court from reviewing USCIS's decision to revoke a visa under § 1155. 604 U.S. at 9. Section 1155 says that USCIS "may, at any time, for what [it] deems to be good and sufficient cause" revoke an approved visa petition. The Court called this language "a quintessential grant of discretion." *Bouarfa*, 604 U.S. at 13; *see also Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007) (holding the same); *Green*, 627 F.3d at 1343 (same).

But *Bouarfa* distinguished § 1155 from provisions in the INA with first-step eligibility determinations. The Court pointed out that § 1155 imposes "no conditions that the [agency] must satisfy" before revoking an approved visa. *Bouarfa*, 604 U.S. at 14. It distinguished non-refugee adjustment of status—the procedure at issue in *Patel*—from § 1155, which "has no threshold requirements." *Id.* at 19. And the Court declined to "resolve whether

15

§ 1252(a)(2)(B)(ii) strips . . . jurisdiction to review threshold determinations."
*Id.* As explained above, the eligibility determination in § 1157(c)(4) is a threshold requirement, so *Bouarfa* does not apply.

**IV.    The government's other cases do not apply.**

The government also cites recent cases applying § 1252(a)(2)(B)(ii) in arguing that it should apply here. These cases concern USCIS's discretion to implement regulations for processing adjustment-of-status applications. *See Geda v. Dir. USCIS*, 126 F.4th 835, 843 (3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024). *Geda* even distinguishes USCIS's discretion to administer that process from USCIS's obligation to assess eligibility requirements. 126 F.4th at 843. These cases don't address eligibility determinations, so they don't apply here.

*     *     *

We hold that terminating refugee status under 8 U.S.C. § 1157(c)(4) is a two-step process, and the first step is nondiscretionary. Because the first step is nondiscretionary, § 1252(a)(2)(B)(ii) does not bar review of USCIS's finding that a noncitizen did not meet the definition of refugee at time of admission under § 1157(c)(4). We do not rule on the arguments that the district court declined to consider.

**CONCLUSION**

We reverse the district court's order and remand for further proceedings.